## Tuck v. The Singer Manuf'g Co.

1. **Instructions:** AS TO IMMATERIAL DEFENSES: REFUSAL TO GIVE IS NOT ERROR: EXAMPLE. Refusing to give instructions with reference to immaterial questions, or matters which are pleaded by way of defense, but which do not constitute a defense in law, is not prejudicial to the party who seeks to raise the immaterial questions, or who has pleaded the incompetent matter, and is no ground for reversal. For illustration see opinion.

2. **Contract:** FOR COMMISSIONS OF SEWING-MACHINE AGENT: ABROGATION BY SUPPLEMENTARY CONTRACT: CONSTRUCTION: SEE OPINION FOR FACTS.

3. **Instructions:** SUBMITTING IRRELEVANT ISSUE WITHOUT EVIDENCE: ERROR WITHOUT PREJUDICE. Submitting to the jury a question on

which there was no evidence was error, but where the effect of such error was to require plaintiff to prove an allegation not necessary to his recovery, and the jury yet found for plaintiff, *held* that the error in giving the instruction was without prejudice to defendant, and was no ground for reversal.

*Appeal from Woodbury District Court.*

SATURDAY, DECEMBER 12.

PLAINTIFF brought this action to recover certain commissions which he alleges were due him on the sale of thirty sewing-machines, such sales being made under a written contract between the parties, whereby plaintiff was to receive a commission on each sale. There was a verdict and judgment for plaintiff. Defendant appeals.

*Joy, Wright & Hudson*, for appellant.

*W. G. Clarke,* for appellee.

REED, J.—On the seventh day of August, 1881, the parties executed a written contract, the material provisions of which are as follows: " The Singer Manufacturing Company, a corporation duly organized, party of the first part, and H. W. Tuck, party of the second part, enter into a contract as follows: (1) The party of the first part agrees to pay the party of the second part $6 per week for his services in selling and leasing Singer sewing-machines. (2) That said first party agrees to pay to second party 15 per centum on all cash that may be realized during the continuance of this agreement from sales or leases made by said second party, which per centum shall be in consideration of all other services, aside from selling and leasing machines, which he may be called upon to render said first party.    *    *    *
(4) No per centum shall be paid on any time sales made at a discount of more than $5 from retail cash price, or for any cash sales made at a discount of more than $10 from retail

cash price, and no per centum shall be paid on any sale in which an old machine is taken in exchange at an allowance of more than $10 on a time sale, or more than $12 on a cash sale; said allowance to be made only on the full retail cash price-list for the new machine.    *    *    *    (8)  It is also agreed between the parties hereto that this agreement may be terminated at the pleasure of either party, and that the salary and per centum aforesaid shall both cease at the date of said termination: provided, however, that, if the said second party shall not enter into business either for himself or others in selling sewing-machines of any other manufacture, he shall receive, in consideration therefor, the aforesaid per centum on the net cash realized, after the termination of this agreement, on business done by him."   The parties subsequently entered into the following supplementary agreement:   "An agreement supplementary to an agreement made between said parties August 7, 1881.   Concerning compensation to said second party, it is hereby agreed that the following shall take the place of the original agreement wherein it conflicts with it, and take the place of the original agreement wherein that is silent.   (1)  Party of the first part agrees to pay party of the second part $6 per week for his services in selling and leasing Singer sewing-machines: provided, however, that said second party shall make one approved sale each week; and, if said second party shall make more than one approved sale any week, he shall receive $8 for the service, instead of $6, for each such week as he shall make two or more approved sales.   (2)  If said second party make more than one approved sale any week, he shall receive, on all cash realized on sales made by him during the continuance of this agreement, 15 per centum on the first and 20 per centum on the second sale, 25 per centum on the third, and 25 per centum on all sales made thereafter during such week in which he makes more than two approved sales. *    *    *"

Plaintiff continued in defendant's employment until the

twelfth of February, 1882, when the agreement was terminated by defendant. Plaintiff alleges that the contract was terminated by defendant without any fault on his part, and this allegation is denied by defendant in its answer. During the time he was in the employment, plaintiff made a number of time sales of machines, which were approved by defendant, but on which the cash had not been realized when the agreement was terminated. It is for commissions on these sales that defendant seeks to recover in this action. The evidence shows that defendant had realized the cash for the sales before the action was brought. It also shows that plaintiff, on more than one occasion, sold two of said machines in one week, and it tends to prove that nearly all of said sales were made at a discount of more than five dollars from the retail cash price of the machines. One of the defenses pleaded by defendant was that, under the contract, plaintiff was not entitled to any commission on time sales made at a discount of more than five dollars from the retail cash price. Another defense pleaded in the answer was that plaintiff, after the termination of the agreement, entered into the business of selling sewing-machines of another manufacture, and this allegation was proven on the trial. But there was no evidence on the question whether the contract was terminated because of the fault of plaintiff. In stating the issues to the jury, the court made no reference to the claim set up by defendant, that plaintiff's right to a commission on the sales was defeated by the fact that they were made at a discount of more than five dollars from the retail cash price of the machines. Nor was any express instruction given as to the effect which that fact (if it was proven) would have on plaintiff's right of recovery. The court, however, told the jury that, if the contract was terminated by defendant without any fault on the part of plaintiff, he was entitled to recover the commission provided for in the second paragraph of the supplementary agreement, on the time sales made by him on which defendant had realized the cash after the con-

tract was terminated, and that his right to recover such com-
mission was not defeated by the fact of his engaging in the
business of selling sewing-machines of another manufacture
after the agreement was terminated. Counsel for appellant
contend (1) that the court erred, in that it failed to instruct
the jury at all with reference to one issue in the case; and
(2) that the instructions given are erroneous.

I.    That it is the duty of the trial court to properly in-
struct the jury with reference to all material issues arising

**1. INSTRUC-
TIONS: as to
immaterial
defenses: re-
fusal to give
is not error:
example.** under the pleadings is not doubted. This court
has often held that the failure to so instruct is
ground for reversal. But it is equally clear that
the failure to give any instructions with reference
to immaterial questions, or matters which are pleaded by way
of defense, but which do not constitute a defense in law, is
not prejudicial to the party who seeks to raise the immate-
rial questions, or who has pleaded the incompetent matter.
The question, then, whether the district court should have
instructed the jury as to the effect on plaintiff's right of
recovery of the fact (if it was proven) that the sales in
question were made at a discount of more than five dollars
from the retail cash price, depends upon whether plaintiff's
right of recovery would be defeated by it. If the fourth
paragraph of the original contract was not modified or abro-
gated by the supplementary agreement, it is clear that the
question made by the answer, with reference to the discount
at which the machines were sold, is very material.

We think it clear, however, that this paragraph was super-
seded by the subsequent contract. It is a provision of the
supplementary contract " that it should take the place of the
original agreement wherein it conflicts with it." And the
provisions of the second paragraph of this agreement are
clearly in conflict with those of that paragraph of the origi-
nal contract. By the latter, it is provided that no per centum
shall be paid on any time sale made at a discount of more
than five dollars from the cash retail price, while by the

former it is provided that a per centum shall be paid on all cash realized from approved sales made by plaintiff during the continuance of the contract. By the one provision the right to the per centum is made to depend on the rate of discount from the retail price at which the sale is made, while by the other it depends upon whether the sale is approved by defendant. The conflict between the two paragraphs is apparent from this statement of their provisions. And the rights of the parties are to be determined with reference to the latter provision. The matter pleaded by the defendant did not, therefore, constitute a defense, and the court did not err in refusing to submit that question to the jury.

II. It is contended that the instructions given by the district court are erroneous because in conflict with the second and eighth paragraphs of the original contract. The second paragraph provides that plaintiff shall be paid a per centum on all cash realized during the continuance of the agreement from sales or leases made by him, and the eighth provides that the salary and per centum shall cease at the date of the termination of the contract. It also provides that if plaintiff shall not engage in the business of selling sewing-machines of other manufacture after the termination of the agreement, he shall be paid the per centum provided for in the contract on the net cash received, after the contract is terminated, on business done by him. The district court held that the second paragraph of the supplementary agreement took the place of these provisions. And we think this holding is correct. There is a conflict between the provisions of the two instruments which is apparent on the most casual reading of them. By the provisions of the second and eighth paragraphs of the original contract, plaintiff is entitled to a per centum on the moneys realized after the termination of the agreement only in case he shall not engage in the business of selling machines of other manu-

2. CONTRACT: for commissions of sewing-machine agent: abrogation by supplementary contract: construction: see opinion for facts.

facture, while paragraph two of the supplementary contract is an express undertaking by defendant to pay him a per centum on all cash realized by it on approved sales made by him during the existence of the contract. The only condition of his right to receive the per centum under this provision is that the sales shall have been approved by defendant. By the express provisions of the supplementary agreement, this paragraph takes the place of the two paragraphs of the original contract.

III.   By the instructions given by the district court the jury were told that plaintiff was entitled to recover if the contract was terminated without fault on his part. As stated above, there was no evidence as to the ground on which the agreement was terminated. The court erred, therefore, in submitting that question to the jury. But we will not reverse the judgment for an error committed by the trial court unless the appellant has been prejudiced by such error. And it is clear, we think, that defendant suffered no prejudice from the ruling in question. By the provisions of the second paragraph of the supplementary contract, which we hold took the place of the second and eighth paragraphs of the original agreements, plaintiff's right to the commissions depended alone on whether the sales made by him had been approved by defendant. The verdict of the jury establishes that they had been so approved. Indeed, there was no question as to that fact. Under the instructions he was required to prove, in addition to that, however, as a condition of his right to recover, that the contract was not terminated because of any fault of his. Under this instruction the jury should have found for the defendant, perhaps. But their verdict for plaintiff necessarily implies that they found every fact established which, under the law, he was required to establish in order to entitle him to a recovery. There is therefore no ground for setting aside their verdict. The error of the

*3. INSTRUCTIONS: submitting irrelevant issue without evidence: error without prejudice.*

court in submitting that question to the jury clearly affords defendant no ground of exception. We think the judgment is right, and it will be

AFFIRMED.